


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUPERIOR SITE WORK, INC. and
DIVERSIFIED CARTING, INC.,

          Plaintiffs,

  - against-

TRITON STRUCTURAL CONCRETE, INC.,
and SAFECO INSURANCE COMPANY
OF AMERICA,

          Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 24 2013   ★

LONG ISLAND OFFICE

**OPINION AND ORDER**
**12-CV-4335 (SJF)(WDW)**

FEUERSTEIN, J.

On July 27, 2012, plaintiffs Superior Site Work, Inc. ("Superior") and Diversified Carting, Inc. ("Diversified") (collectively, "plaintiffs") commenced this action in the Supreme Court of the State of New York, County of Suffolk against defendants Triton Structural Concrete, Inc. ("Triton") and Safeco Insurance Company of America ("Safeco") (collectively, "defendants"), seeking damages for breach of contract, enforcement of liens and payment of bonds. On August 29, 2012, defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) on the basis of this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, to compel mediation. For the reasons set forth below, the motion is denied.

1

I. Background[1]

A. Factual Background

Superior and Diversified are both New York corporations with their principal places of business in Bay Shore, New York. (Compl., ¶¶ 1-2). Triton is a California corporation with its principal place of business in San Diego, California. (Notice of Removal ["Rem. Not."], ¶ 13). Safeco is a New Hampshire corporation with its principal place of business in Boston, Massachusetts. (Rem. Not., ¶ 14).

In or about 2008 and 2009, Triton entered into a contract with the New York City Department of Parks and Recreation ("the City") for the construction of a new amphitheater at the Pelham Fritz Recreation Center, located at Mount Morris Park West in Marcus Garvey Park ("the Amphitheater Project"). (Compl., ¶ 5; Affidavit of Steve Levan ["Levan Aff."], ¶ 2 and Ex. A ["Subcontract"]).

On or about April 1, 2010, Safeco, as surety, and Triton, as principal, issued a payment bond in the sum of five million two hundred fifty-five thousand thirty dollars and ninety cents ($5,255,030.90) for the benefit of the City, and all subcontractors, materialmen and laborers who performed work in connection with the Amphitheater Project. (Compl., ¶ 12).

On June 11, 2010, Triton entered into a subcontract with Superior to provide labor and materials for various construction, reconstruction and demolition work in furtherance of its contact with the City on the Amphitheater Project. (Compl., ¶ 6). Pursuant to that subcontract, Triton also approved Diversified as a subcontractor. (Compl., ¶ 7; Subcontract, ¶ 8.17 (listing Diversified as a

---

[1] With the exception of the terms of the parties' subcontract, the following facts are taken from the pleadings and do not constitute findings of fact by the Court.

2

"[l]ower-tier subcontractor[] approved by [Triton]")).

Article 15 of the subcontract is entitled "Disputes Resolution" and provides, in pertinent part, as follows:

> "15.1 <u>Claims Not Involving Owner</u>– To the extent [Superior] submits a claim which [Triton] determines is one for which [the City] may not be liable, or is one which [Triton] elects to not allow [Superior] to further pursue with [the City], * * *, the following procedures shall apply and begin within 60 days of notification:
>
> (a) If the dispute cannot be settled through direct discussions, the parties shall attempt to settle the dispute by mediation before recourse to any other method of dispute resolution. * * *
>
> (b) If mediation does not resolve the dispute, then the parties may agree to resolve the dispute through binding arbitration. * * *
>
> (c) If mediation does not resolve the dispute and the parties do not agree to resolution by binding arbitration, either party may proceed with any allowable resolution process."

(Levan Aff., Ex. A).

According to plaintiffs, they duly completed all of the work they were required to perform within the scope of the subcontract. (Compl., ¶¶ 8-9).

On or about October 17, 2011, Diversified filed with the New York City Department of Finance ("NYC Department of Finance") a notice of public improvement lien in the sum of forty-four thousand five hundred fifty-five dollars and fifty-seven cents ($44,555.57), against money due, or to become due, to Triton from the Comptroller of the City of New York for the Amphitheater Project, pursuant to Section 12 of the New York Lien Law. (Compl., ¶ 10).

On or about December 14, 2011, Superior filed with the NYC Department of Finance a

3

notice of public improvement lien in the sum of two hundred ninety-three thousand eight hundred two dollars and fifty cents ($293,802.50), against money due, or to become due, to Triton from the Comptroller of the City of New York for the Amphitheater Project, pursuant to Section 12 of the New York Lien Law. (Compl., ¶ 10).

On or about March 1, 2012, Triton, as principal, and Safeco, as surety, posted two (2) bonds, one (1) in the sum of forty-nine thousand eleven dollars and thirteen cents ($49,011.13) and the other in the sum of three hundred twenty-three thousand one hundred eighty-two dollars and seventy-five cents ($323,182.75) to discharge the liens of Diversified and Superior, respectively, pursuant to Section 21(5) of the New York Lien Law. (Compl., ¶¶ 26-27). The conditions of the bonds are "such that if Triton did not well and truly pay any judgment which may be recovered in an action to enforce the lien in a sum not exceeding [the amount of the respective bond], then Safeco's obligation under the bond would remain in full force and effect." (Compl., ¶¶ 32-33).

B. Procedural Background

On July 27, 2010, plaintiffs commenced this action in the Supreme Court of the State of New York, County of Suffolk against defendants, seeking damages for breach of contract (first cause of action against Triton), enforcement of mechanic's liens (second cause of action against both defendants) and payment under payment bonds (third cause of action against Safeco). Specifically, plaintiffs allege, *inter alia*: (1) that Triton has breached the subcontract by failing to pay them for the work they performed pursuant to the subcontract; (2) that their liens have not been waived, cancelled or discharged, except by defendants' posting of the bonds on March 1, 2012, and that they are entitled to a judgment enforcing their liens; and (3) that in the event Triton does not

4

pay plaintiffs on account of their liens, they are entitled to recover the amounts of their respective payment bonds from Safeco. Plaintiffs seek, *inter alia*: (1) damages from Triton for breach of contract in the amounts of (a) three hundred twenty-three thousand one hundred eighty-two dollars and seventy-five cents ($323,182.75), plus interest and costs, with respect to Superior, and (b) forty-nine thousand eleven dollars and thirteen cents ($49,011.13) with respect to Diversified; (2) judgment declaring (a) that plaintiffs' liens "are valid and subsisting liens for an amount to be adjudged due, together with interest to the date of payment and the costs and disbursements of this action, upon the monies of the [City] applicable to the construction of the Amphitheater Project to the extent of the amount due on the Contract for the aforesaid project[,]" (b) "that plaintiffs' liens having been discharged upon the filing of bonds pursuant to [New York] Lien Law § 21(5), such judgment be in form only[,]" (c) the amounts due on plaintiffs' liens, plus interest and costs and disbursements, (d) "the equities of the parties and the order of priorities of any and all liens or claims * * *[,]" (e) the amount due to Triton from the City "on account of work performed in connection with the Amphitheater Project * * *[,]" (f) that Safeco "is liable to plaintiffs * * * in an amount that will satisfy plaintiffs' liens plus interest and costs[,]" and (g) that in the event it is determined that plaintiffs do not have valid and subsisting liens, they have judgment against Triton in the sum of three hundred twenty-three thousand one hundred eighty-two dollars and seventy-five cents ($323,182.75), plus interest and costs, with respect to Superior, and forty-nine thousand eleven dollars and thirteen cents ($49,011.13) with respect to Diversified; and (3) judgment against Safeco in the amounts of (a) three hundred twenty-three thousand one hundred eighty-two dollars and seventy-five cents ($323,182.75), plus interest and costs, with respect to Superior, and (b) forty-nine thousand eleven dollars and thirteen cents ($49,011.13) with respect to Diversified.

5

On August 29, 2012, defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) on the basis of this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Defendants now move to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, to compel mediation.

II.  Discussion

   A.  Standard of Review

Federal courts are courts of limited jurisdiction, see Gunn v. Minton, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013); Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (holding that federal courts "possess only that power authorized by Constitution and statute * * *.") Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of

6

their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"[M]aterials extrinsic to the complaint" may be considered on a Rule 12(b)(1) motion. Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002); see also Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).

B. The Federal Arbitration Act

Defendants contend that plaintiffs' claims "are garden variety breach of contracts for which only Triton and not the City may be held liable" and that "Triton has never allowed either [plaintiff] to pursue any claim directly with the City," (Levan Aff., ¶ 6), and, therefore, Article 15 of the subcontract covers plaintiffs' claims. According to defendants, the Federal Arbitration Act ("the FAA" or "the Act"), 9 U.S.C. § 1, *et seq.*, thus, bars plaintiffs' action in this Court.

9 U.S.C. § 2 provides, in relevant part, as follows:

> "A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

The FAA is the substantive law applicable to any arbitration agreement within the coverage of the Act, see Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S. Ct. 1262, 173 L. Ed. 2d 206

(2009); Security Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004), and "was designed to promote arbitration." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749, 179 L. Ed. 2d 742 (2011); see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir. 1988) (holding that the Act "reflects a congressional recognition of the desirability of arbitration as an alternative to the complications of litigation." (quotations, alterations and citations omitted)). The Act "requires courts to enforce the bargain of the parties to arbitrate * * * [and] reflects an emphatic federal policy in favor of arbitral dispute resolution." Marmet Health Care Center, Inc. v. Brown, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012) (quotations and citations omitted); see also CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012). However, the Act "does not require parties to arbitrate when they have not agreed to do so." Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

The threshold issue presented on this motion is whether Article 15 of the parties' subcontract constitutes an agreement "to settle by arbitration" that is enforceable under the FAA. Since the Act does not define "arbitration," courts must look to "federal common law [to] provide[] the definition of 'arbitration' under the FAA." Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135, 707 F.3d 140, 143 (2d Cir. 2013). The Second Circuit has held that agreements that "manifest[] an intention by the parties to submit certain disputes to a specified third party for *binding resolution*," McDonnell Douglas, 858 F.2d at 830 (emphasis added), constitute "arbitration agreements" within the meaning of the Act, notwithstanding the nomenclature used by the parties to the agreement. See id. ("It is * * * irrelevant that the contract

8

language in question does not employ the word 'arbitration' as such. Rather, what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive settlement of certain grievances under the Agreement. * * * Similarly, it is not dispositive that the Agreements fail to term the independent [third party's] conclusions 'final' or 'binding' [so long as] the parties' intent in that regard [is] clear from the language of their contract." (quotations, alterations and citations omitted)).

Nothing in Article 15 of the parties' subcontract manifests an intent by the parties to require the submission of any disputes arising thereunder to "a specified third party for binding resolution." McDonnell Douglas, 858 F.2d at 830. The only binding ADR procedure contemplated under the subcontract is binding arbitration if the contemplated mediation fails, and then only upon the mutual consent of the parties.

The Second Circuit has not yet determined whether the FAA applies to agreements to submit disputes to nonbinding alternative dispute resolution ("ADR") procedures, such as mediation, although district courts in this Circuit have found the FAA to be applicable to such provisions. See American Center for Law and Justice-Northeast, Inc. v. American Center for Law and Justice, Inc. ("ACLJ-Northeast"), No. 3:12cv730, 2012 WL 2374728, at * 5 (D. Conn. June 22, 2012) (citing cases). The first of those cases, AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985), was decided prior to McDonnell Douglas and involved an agreement requiring the parties to submit their disputes to the National Advertising Division of the Council of Better Business Bureaus ("NAD") "to obtain a non-binding advisory opinion in a dispute over the propriety of advertising claims." Id. at 457. The district court in that case held that "[i]f the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration." Id.

9

However, that case is inapposite because, *inter alia*, the district court found that "[v]oluntary compliance with NAD's decisions has been universal," id. at 458; that "[r]eportedly no advertiser who has participated in the complete process of a NAD investigation and NARB [National Advertising Review Board] appeal has declined to abide by the [NAD] decision," id.; and, thus, the ADR procedure at issue in that case "provide[d] an effective alternative to litigation." Id. at 467. This case, to the contrary, involves a typical mediation utilized by parties in an attempt to settle their disputes short of litigation. The "decisions" of such mediators do not have universal, or even near-universal, compliance and often the parties thereto decline to abide by them and proceed with litigation. Although the nonbinding mediation contemplated by the parties' subcontract could potentially settle plaintiffs' claims, it is just as likely that it would not. Thus, unlike the ADR procedure at issue in AMF, the mediation at issue in this case is not an effective alternative to litigation.

In the unreported case, ACLJ-Northeast, 2012 WL 2374728, the district court, relying upon AMF, Allied Sanitation[2] and CB Richard Ellis, Inc. v. American Environmental Waste Mangement, No. 98-CV-4183, 1998 WL 903495 (E.D.N.Y. Dec. 4, 1998), found the FAA

---

[2] Allied Sanitation, Inc. v. Waste Management Holdings, Inc, 97 F. Supp. 2d 320, 322, (E.D.N.Y. 2000), involved an agreement to submit disputes to an ADR negotiation procedure and, if that proved unsuccessful, to binding arbitration. In ruling upon the issue of whether the petition to stay arbitration or other ADR procedures between the parties was ripe for review, the district court held that "[c]ommon sense dictates that the conditional nature of the arbitration clause does not preclude litigation challenging the clause's enforceability." Id. at 327. In dicta, and relying upon the holdings in AMF and CB Richard Ellis, without making any reference to McDonnell Douglas, the court stated that "[t]he concept of arbitration plausibly embraces all contractual dispute resolution mechanisms, consistent with Congress's design to foster alternative means to resolving litigation." Id. Moreover, that case involved the issue of ripeness, not whether an agreement to submit disputes to a nonbinding ADR procedure constitutes an agreement to arbitrate that is enforceable under the FAA. Accordingly, that case is inapposite and its dicta unpersuasive.

10

applicable to a provision requiring the parties to submit their disputes to nonbinding arbitration in accordance with the rules of the Christian Conciliation Service. The court disagreed with the plaintiff's reasoning that arbitration cannot be compelled under the FAA because the arbitration clause at issue did not require the parties to reach a definitive resolution on the grounds: (1) that "the parties are two organizations that share a common mission and have worked together to advance their shared view of constitutional law since 1997[;]" (2) that it was "evident that the parties specifically included [the arbitration provision] in their Agreement because they contemplated a private adjudication to guide resolution of the merits of their dispute[;]" and (3) that "[a]ssuming the good faith of the parties, a neutral third party may well help to resolve this dispute in a conciliatory, rather then adversarial, manner." Id., at * 6. For the reasons set forth herein, the cases upon which the district court in ACLJ-Northeast relied are either inapposite or unpersuasive. Furthermore, ACLJ-Northeast makes no reference to McDonnell Douglas. In any event, no such solidarity or commonality of purpose, suggesting a greater chance of success by a conciliatory ADR procedure and thereby rendering the ADR procedure a more effective alternative to litigation, is present in this case. Accordingly, that case is both inapposite and unpersuasive.

The unreported case, CB Richard Ellis, Inc. v. American Environmental Waste Mangement, No. 98-CV-4183, 1998 WL 903495 (E.D.N.Y. Dec. 4, 1998), appears to contain a similar ADR provision as contained in this case, i.e., "a general mediation clause." Id. at * 1. The district court, relying solely upon AMF and without making any reference to McDonnell Douglas, held that "[b]ecause the mediation clause in th[at] case * * * manifest[ed] the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' * * * agreement, th[e] mediation clause fit[] within the Act's definition of arbitration." Id. at * 2. However, I

11

respectfully decline to follow the holding in that unreported decision, since, *inter alia*, it would render as superfluous the Second Circuit's reliance upon the binding nature of the ADR procedure at issue in McDonnell Douglas, 858 F.2d at 830-31, in its analysis of what constitutes an enforceable arbitration clause. The Second Circuit did not hold that an enforceable arbitration clause exists where language clearly manifests an intention by the parties to submit certain disputes to a specified third party to attempt to settle them. Rather, it held that an enforceable arbitration clause exists where the parties' "language clearly manifests an intention by the parties to submit certain disputes to a specified third party *for binding resolution*," id. at 830 (emphasis added), and that "what is important is that the parties clearly intended to submit some disputes to their chosen instrument *for the definitive settlement* of certain grievances under the Agreement." Id. at 830-31 (emphasis added; alteration, quotations and citations omitted). Although the Second Circuit indicated that an arbitration provision need not contain the words "final" or "binding" to be enforceable, it held that "the parties' intent in that regard [must] seem[] clear from the language of their contract." Id. at 831.

Other Circuit Courts have also held that agreements to submit disputes to nonbinding ADR procedures were not enforceable under the FAA. See, e.g. Evanston Ins. Co. v. Cogswell Properties, LLC, 683 F.3d 684, 693-94 (6th Cir. 2012) (holding that an appraisal procedure was not an arbitration because it did not "provide for a final and binding remedy by a neutral third party"); Advanced Bodycare Solutions, LLC v. Thione International, Inc., 524 F.3d 1235, 1239 (11th Cir. 2008) (holding that a provision requiring mediation was not enforceable under the FAA); Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc., 390 F.3d 684, 689-90 (10th Cir. 2004) (holding that an appraisal procedure did not constitute an arbitration because it did not "empower[]

12

a third party to render a decision settling [the parties'] dispute"); Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 350 (3d Cir. 1997) (holding that a nonbinding ADR procedure did not constitute an arbitration because "the essence of arbitration * * * is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate th[o]se disputes through to completion, i.e. to an award made by a third-party arbitrator."); cf. Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir. 2004) (holding that a procedure that required the parties to an agreement to submit their dispute to an independent adjudicator, i.e., an accountant, for a final decision in accordance with substantive standards following an opportunity for each side to present its case constituted an "arbitration in everything but name.") As held by the Eleventh Circuit:

> "[T]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. * * * When * * * a party has contractually preserved all its rights and remedies in court and is unwilling to undertake mediation voluntarily, the FAA's goal of minimizing the time and cost of litigation is ill-served by a prefatory round of motions practice. Unlike submitting a dispute to a private adjudicator, which the FAA contemplates, compelling a party to submit to settlement talks it does not wish to enter and which cannot resolve the dispute of their own force may well increase the time and treasure spent in litigation.
>
> * * * [M]ediation is not within the FAA's scope. * * * Mediation, as that term is commonly understood[] is a method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution * * * or a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute. * * * Simply stated, mediation does not resolve a dispute, it merely helps the parties do so. In contrast, the FAA presumes that the arbitration process itself will produce a resolution independent of the parties' acquiescence- an award which declares the parties' rights and which may be confirmed with the force of a judgment. * * * Parties to a mediation contract have not agreed to submit a dispute for decision by a third party * * * because the third party makes no decision.
>
> In short, because the mediation process does not purport to adjudicate or resolve a case in any way, it is not 'arbitration' within the meaning of the FAA."

Advanced Bodycare, 524 F.3d at 1240 (alteration, quotations, footnote and citations omitted).

Since there is no language in the parties' subcontract manifesting an intent to submit any disputes arising thereunder to "a specified third party for binding resolution," McDonnell Douglas, 858 F.2d at 830, at the first instance, the mediation procedure contemplated therein does not constitute an agreement to "settle by arbitration" within the meaning of the Act. Accordingly, defendants' motion is denied.[3]

III. Conclusion

For the reasons stated herein, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, to compel mediation is denied in its entirety. The parties are directed to appear, with authority or with individuals with authority to settle this matter, before me in Room 1010 of the Central Islip Courthouse, located at 100 Federal Plaza, Central Islip, New York, for an initial conference in this matter on **September 18, 2013 at 11:15 a.m.**

SO ORDERED.

s/ Sandra J. Feuerstein
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 24, 2013
Central Islip, N.Y.

---

[3] In light of this determination, it is not necessary to consider the parties' remaining contentions.

14